UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,           ) Cr.#15-CR-10338-FDS
                                    )
                    Plaintiff,      )
          v.                        )
                                    )
EDWIN GONZALEZ                      )
                    Defendant.      )
_____)


### SENTENCING MEMORANDUM OF DEFENDANT PURSUANT TO F.R.Cr.P. RULE 32(d) and 18 U.S.C. § 3553(a)


*Preliminary Statement*.

EDWIN GONZALEZ, who is an admitted member of MS-13, was charged, went to trial and was convicted of conspiracy to engage in racketeering, 18 U.S.C. 1962(d), that resulted in the death of two individuals affiliated with the 18th Street gang, Wilson Martinez and Christopher De la Cruz.  At the time of the offense, EDWIN was 20 years of age. He had no prior criminal history. The current state of neuroscience makes clear that: "diminished culpability associated with relative immaturity, the generally transient characteristics associated with the immaturity of adolescence, and the greater prospects for rehabilitation associated with maturational processes which ordinarily persist until the mid-20's are applicable to persons aged 18-21" Affidavit of Robert Kinscherff, Ph.D., J.D. paragraph 30.  See Exhibit A. EDWIN was such an adolescent at the time of the

1

offense, an adolescent with diminished culpability and a greater potential for rehabilitation.

EDWIN had no other option than to put the Government to its proof at trial.[1]  While this is not a state murder case with the Constitutional protection of a jury considering all the elements and the degree of murder, this Honorable Court has indicated that it alone will determine the degree of murder for the purpose of calculating the applicable U.S. Sentencing Guideline and the most appropriate sentence.

### *Trial Was EDWIN's Only Hope*

"*I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution.*"

> Thomas Jefferson to Thomas Paine, 1789. ME 7:408
>
> *The Writings of Thomas Jefferson,* (Memorial Edition) Lipscomb and Bergh, editors (1903-04, 20 Volumes)

The Government, both before and after this RICO conspiracy trial, has asked for a life sentence for EDWIN.  U.S. Probation has also suggested that the U.S. Sentencing Guidelines call for a sentence of not less than life as well as suggested that it has

---

[1] The Court, during the sentencing of Joel Martinez, indicated that the Court's sentencing of the various defendants in this case had "not have been more than or less than what the government recommended." . TR 5/22/18 at 30.   The government made clear prior to trial that it was seeking a life sentence for EDWIN either after a plea or after trial.        .

failed to identify any factors, either as a departure or a variance that would justify something less. PSR ¶s 138-140.  Such cold calculation would have taken place on either a plea or trial.  As the Court is well aware, a "life" sentence, following the Comprehensive Criminal Reform Act of 1984 (effective Nov. 1, 1987), is "life without parole" because parole was abolished in the federal system.

Of significant note, however, when trial in this matter began, the Government objected during EDWIN's opening argument concerning the suggestion that a cooperator who would be confessing to murder was facing a life without parole sentence which that may be reason to view such testimony with caution. This Honorable Court sustained that objection and admonished the jury that life without parole was a possible sentence in Massachusetts state court, but NOT in the federal system.

> THE COURT: Let me explain something. First degree murder in state law is a mandatory life sentence. It is not a mandatory life sentence under federal law. You are to disregard what punishment this defendant will receive if indeed he is convicted at the end of the day.

*TR 6/7/18 p.7*

Yet, here stands EDWIN GONZALEZ before this Honorable Court facing a sentence that the Court (and the Government by way of

its objection) indicated to the jury was not even a possibility. Equally, the full elements of the various degrees of murder under Massachusetts law, are fundamental factors for the jury to consider under the Fifth and Sixth Amendments of the United States Constitution prior to sentencing an adolescent offender to life without parole.

As set forth prior to trial, Massachusetts law for homicide, which was specifically charged as a predicate act in the Superceding Indictment, requires that the degree of murder be a finding that is solely up to the jury. <u>See</u> Motion for Jury to Decide Degree of Murder, Dkt. 2377, *denied* Dkt. 2493. A jury alone should determine the mitigating or aggravating factors, factors such as gang retaliation, particular role in the offense, influence of others or even youth in deciding whether murder is in the first or second degree. The difference between a sentence for first or second degree in this case could well be as much as *50-60 years under the Advisory Guidelines* (as little as 20 years or less for 2nd degree murder versus life without parole for a 20 year old who could live to be 90-100 years).[2]  EDWIN maintains that the Fifth and Sixth Amendments require that, in this particular case, the jury should decide the degree of murder.

---

[2] In the Massachusetts state system, a person convicted of second degree murder faces a sentence of as little as 15 years at which time he or she becomes eligible for parole unless the court sets the minimum sentence at 20 or 25 years.

### *What should be EDWIN's sentence under 18 U.S.C. § 3553(a)?*

This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for EDWIN GONZALEZ by addressing each of the available sentencing options under the provisions of 18 U.S.C. § 3553(a). While the Court must give consideration of the advisory United States Sentencing Guidelines, it is free to reject their application to a particular case. See Gall v. United States, 552 U.S. 38, 128 S. Ct. 586 (2007).

For each of the reasons set forth below, EDWIN respectfully requests the Court to reject the Guideline calculations suggested by Probation, and find that the Guidelines do not provide sufficient guidance in this particular case to meet all the goals of sentencing.  EDWIN respectfully submits that a sentence of **480 months (40 years), a sentence that is identical to that imposed on Joel Martinez, whose racketeering acts included murder and multiple attempted murders,**  is reasonable and appropriate when considering all the relevant sentencing factors of 18 U.S.C. § 3553(a). In particular, such a sentence addresses both EDWIN's role in the offense, the disparity of sentences with similarly situated defendants, 18 U.S.C. § 3553(a)(6), as well suggests to the Court that a sentence of "life" for this adolescent offender would be a violation of the Eighth Amendment.

EDWIN respectfully disagrees with U.S. Probation's over-emphasis on U.S.S.G. calculations in its compilation of the PSR which fails to address the disparity in sentencing. While the Guidelines are one of several factors the Court must consider in imposing a reasonable sentence, the Supreme Court has made clear that the Guidelines **must not carry any presumption of reasonableness** if they are to pass 6th Amendment muster, see Nelson v. United States,555 U.S. ___ , 129 S.Ct. 890 (2009).  The First Circuit in United States  v. Vega-Santiago,, 519 F.3d 1, 9 (1st Cir.  2008), *en banc,* has also stressed the importance of a district court examining all the 3553(a) factors when imposing a sentence utilizing the broad discretion it has under 3553(a):

"Under *Booker*,[3] Rita v. United States,[551 U.S. 338] 127 S. Ct. 2456 (2007), and now Gall v. United States, [552 U.S. 38], 128 S. Ct. 586 (2007) , the sentencing inquiry, after calculating the guideline range, is far more broad, open-ended and discretionary."

While the horrific unlawful conduct that occurred here must be addressed in order to punish and deter further crimes, other factors such as EDWIN's adolescence at the time of the offense, his difficult and unfortunate background, the strong influence of others, and the comparative sentences of similarly situated

---

[3] 543 U.S. 220 (2005)

offenders should also be considered in reaching a sentence that is "sufficient but not greater than necessary" to reach all the sentencing goals.

As set forth herein, EDWIN is an individual who is an example of the "*unique study in the human failings that sometimes mitigate*" a sentence, See <u>United States v. Koon</u>,, 518 U.S. 81, 113 (1996). ("*It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue*").

**SENTENCING OPTIONS**

18 U.S.C. § 3553(a)(4) specifically "permits the court to tailor the sentence in light of other statutory concerns."  As former Attorney General Holder has stressed:

> [T]oo many Americans go to too many prisons for far too long and for no good law enforcement reason...Although incarceration has a role to play in our justice system, widespread incarceration at the federal, state and local levels is both ineffective and unsustainable...It imposes a significant economic burden— totaling $80 billion in 2010 alone — and it comes with human and moral costs that are impossible to calculate.
>
> Former Attorney General Eric Holder, ABA Speech August

2013.

**18 U.S.C. § 3553 SENTENCING FACTORS**

1.   *The nature and circumstances of the offense*, 18 U.S.C. § 3553(a)(1).

There is little question that the scourge of *all* gangs in America cry out for mechanisms to eliminate or militate against the damage caused. This is especially true for MS-13s.[4] Born out of young groups of Latinos in Los Angeles who were fleeing from El Salvador and Honduras, and rejected (beaten) by other Los Angeles gangs, they vowed to become the strongest in "control." See *MS-13 in the United States and Federal Law Enforcement Efforts*, Finklea, Congressional Research Service 2018, See Ex. B.

Recruited at a young age, once a person joined a gang for protection and/or peer pressure, the likelihood of criminal activity increases.  See Herbst, *The Likelihood of Gang Membership: Immigrant Generational Differences Among Hispanic Youth*, *reported at* :https://etd.ohiolink.edu/rws_etd/document/get/bgsu1377696883/inline, See Ex. C. Once in, it is almost impossible to get out. See testimony of Government MS-13 expert George Norris, TR 7/7/18 at 331-32.  See also Blitzer, *Teens Trapped Between a Gang and the Law*, New Yorker January 1, 2018, See. Ex. D.

---

[4] As well as the 18th Street which is also considered a dangerous and violent street gang.  A number of its members have been convicted of violent crimes in this courthouse.

EDWIN was such an individual recruited into MS-13 at an early age, brought to the United States and led by his cousin, Oscar Duran.  EDWIN's participation in two racketeering acts of murder has been found by the jury to be true. The severity of the crimes can not be ignored. Caught in a kill or be killed war between the Ms-13s and 18th Street gang, EDWIN was found to have been a participant in the homicides of two 18th Street members. Such requires a sentence that reflects both appropriate punishment tailored to the offense conduct, deterrence and protection of society. That is not to say such goals require a "life" sentence in this case.

1B.  *The history and characteristics of the defendant.*

EDWIN is now a 23 year old young man, a devoted father of a three year old girl who resides with her mother Jocelyn Cedillo. Ms. Cedillo now resides in Maryland following EDWIN's arrest. EDWIN has no prior criminal history.  Throughout his young life, he has been a hardworking, and reliable restaurant worker (work records submitted at trial).

As a young child, EDWIN's parents emigrated to the United States and *left him behind in El Salvadore* with an aunt. EDWIN, like other witnesses whom the Court heard at trial, suffered the familiar story of being beaten by schoolmates and others in his town in El Salvador. At about 15 he joined the MS-13 for protection. At 16 he too emigrated, illegally, to the United

9

States where he had difficulty assimilating with his parents he didn't know and his peers. His cousin, Oscar Duran, re-introduced him to MS-13. PSR ¶s 102-111.

Neuroscience tells us that adolescents such as EDWIN are bound to be influenced by their peers and the pressures of the social ills in which he was raised. See Affidavit of Robert Kinscherff, Ph.D., J.D. Adolescents also have a greater likelihood of being rehabilitated than adult offenders. Id.


(2)(A) (B) (C). *The need for the sentence "to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant."*

EDWIN stands convicted of a conspiracy to engage in racketeering (RICO) where he was held responsible for participating, along with others in two acts of murder.  The proposed sentence of **40 years (480 months)**, that will be followed by inevitable deportation, forces him to not only to be removed from the country but also removed from his child and family. That alone imposes unimaginable punishment. On the other hand, a sentence at the advisory Guideline range submitted by Probation, *life without parole*,  would provide a much "greater than

necessary" punishment in this case, one that raises significant
Fifth and Eighth Amendment concerns.


2 (D) *"to provide the defendant with needed educational or
vocational training, medical care, or other correctional
treatment in the most effective manner."*

In that EDWIN is a deportable alien few, if any, training
programs and resources will be available to him. He will
therefore have a more difficult time in prison than the average
inmate. For Example:  BOP Policy Statement 5330.10 ststes:
**"SECTION 2 - PROVISIONAL § 3621(E) ELIGIBILITY** - TO BE COMPLETED
ONLY IF THE INMATE HAS COMPLETED OR QUALIFIES FOR THE RESIDENTIAL
DRUG ABUSE TREATMENT PROGRAM. FOR RESIDENTIAL DRUG ABUSE
TREATMENT PROGRAM GRADUATES TO BE ELIGIBLE FOR EARLY RELEASE,
THEY MUST (DAPC must initial):___ **NOT BE AN INS DETAINEE**.  <u>See
also</u> BOP Program Statement P5100.08.


4). *The applicable category of offense under the Advisory
Guidelines.*

EDWIN submits that the Advisory Guideline level most
applicable to this applicable case, gangs of young men
retaliating against each other, is the one for murder in the
second degree, 2A1.2. That is the Guideline applicable to the

elements of the racketeering act(s) that the Court instructed on, and, *based on those instructions*, the jury found EDWIN responsible for the two homicides charged in the racketeering acts.  The applicable Base Guideline Level should be found to be *38, not 43.* EDWIN has also made other objections to the calculations such as vulnerable victim and role.

U.S.S.G. § 5K2.1 points out that: "[l]oss of life does not automatically suggest a sentence at or near the statutory maximum," yet that Guideline was ignored by Probation and not discussed in the PSR.

The total applicable Guideline range, if one can be calculated at all in this particular case, *prior to any departures or variances*, is Offense Level 40, in that two homicide racketeering acts were found resulting in a Guideline range of *292-365 months*.  EDWIN, with no viable options, went to trial to preserve constitutional issues set forth herein.  Given EDWIN's unyielding attempts to resolve the matter prior to trial, a question arises whether he should be treated differently, or punished for going to trial, as compared with similarly situated co-defendants who plead.

///

(6).   *The need to avoid unwarranted sentence disparities with similar offenders who have been found guilty of similar conduct.*

This Honorable Court, has already sentenced several co-defendants for homicide, and attempted homicide, related racketeering acts in this case. The sentences have varied significantly and been in accordance with the Government requests. See footnote 1 *infra*.   EDWIN is mindful that each individual is different, with various differing mitigating and aggravating factors.

As set forth herein, EDWIN's young age, and lack of youthful guidance at the time of the offenses, is an important mitigating factor. See U.S.S.G. § 5H1.1. Justice Breyer, in his concurring opinion in Miller v.Alabama,____U.S.___, 132 S. Ct. 2455 (2012), which was joined by Justice Sotomayer, raised a question whether juveniles (which equally applies to adolescents and young adults as set forth in the Kinscherff affidavit) have the same mens rea as adults in committing crimes.   The justices reasoned that:

> [T]he ability to consider the full consequences of a course of action and to adjust one's conduct accordingly is precisely what we know juveniles lack capacity to do effectively. Ante,  at 8-9. Justice Frankfurter cautioned, "Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to a determination of a State's duty to- ward children." May v. Anderson, 345 U. S. 528, 536 (1953) (concurring opinion).

EDWIN also submits that it is also important to look at other federal and state offenders convicted of murder[5] and the statistical sentences imposed on those individuals convicted of similar conduct.

According to U.S. Sentencing Commission's Quarterly Report for third quarter 2018, both the average and mean sentence for murder was 300 months.  In 2017, the average was 180 months and the mean was 224 months. <u>See</u> Ex. E.

According to Bureau of Justice Statistical Report for State felonies in 2006, the average sentence for murder and non negligent homicide was 250 months. <u>See</u> Ex. F.

While this Honorable Court has had the benefit of presiding over the trials and sentences of each of EDWIN's co-defendants, each defendant, and their background, have characteristics that merit individual attention. The sentences of co-defendants who have been found "responsible" for homicide during the racketeering conspiracy have ranged from approximately 20 years to life. Of note, a number of co-defendants admitted to "first degree murder" guidelines which EDWIN did not, and can not agree with because it is a determination which Massachusetts law reserves for the jury.

---

[5] Edwin Gonzalez was not convicted of murder, the state cases for that state offense are still pending.

14

The Guidelines' broad offense levels concerning Racketeering Conspiracies, and homicides that occurred therin, do not provide a fact specific approach to weighing specific criminal involvement of each individual; often treating one alleged member the same as those with much less culpability. As set forth above, EDWIN was a teenager when recruited into the MS-13's, and once in, controlled by others. (Including one, Oscar Duran, whom the government will undoubtedly suggest less than a life sentence for). He was not a leader, but a following member who followed the instructions of the leadership.

**Reasons for Departure from Applicable Guideline Level, and/or Variance with the Guidelines based on 18 U.S. C. § 3553(a) factors.**

> *As a profession, and as a people, we should know what happens after a prisoner is taken away. To be sure the prisoner has violated the social contract; to be sure he must be punished to vindicate the law, to acknowledge the suffering of the victim, and to deter future crimes. Still, the prisoner is a person; still, he or she is still a family of humankind.*
> Associate Justice Anthony Kennedy
> Supreme Court of the United States
> August 9, 2003

15

There are numerous reasons why, in addressing all the goals of sentencing, the Court could both depart below any specific Guideline Level and/or impose a sentence in variance with the Guidelines.

For example:

1. The Court can consider the relative sentences of similarly situated  wrongdoers in accordance with 18 U.S.C. § 3553(a)(6) in choosing an appropriate sentence;

2.  If, given a sentence other than life, 40 years as suggested by the defense, EDWIN, in the twilight of his life, will eventually be banished to El Salvador, a country where he will perpetually be at risk based on his MS 13 membership, a membership which is impossible to leave according to the experts, and forever separated from his family and child;

3. The disparate treatment of deportable aliens in the BOP that prevent him from receiving many beneficial programs available to others;

4. EDWIN's youth, lack of youthful guidance, diminished culpability and potential for rehabilitation;

5. Whether gang warfare between MS-13 and 18th St. contributed to the violent acts. See e.g. U.S.S.G. 5K2.10;

6.   The totality of circumstances justifying a sentence that is reasonable and not "greater than necessary" to carry out all sentencing goals.


## CONCLUSION - SENTENCING RECOMMENDATION

WHEREFORE, EDWIN GONZALEZ, respectfully requests this Honorable Court to sentence him to **480 months (40 years) with three years of supervised release** (which will be suspended following his deportation). He further requests that the Court find that he has no ability to pay a fine and that he be designated to a facility closest to his family.  Such a sentence would be a fair, just, and most cost effective approach to carrying out all the goals of sentencing.

Date:  November 19, 2018        Respectfully submitted,

                               BOURBEAU & BONILLA, LLP
                               S/ Michael C. Bourbeau
                               MICHAEL C. BOURBEAU BBO# 545908
                               80 Washington St. Building K
                               Norwell, MA 02061
                               (617) 350 6565

                               Attorney for Defendant
                               EDWIN GONZALEZ

Certificate of Service

 I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.        S/ Michael C. Bourbeau