# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **EDWIN GONZALEZ,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **Criminal Action No.** |
| **v.** ) | **15-10338-FDS** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO VACATE

**SAYLOR, C.J.**

Petitioner Edwin Gonzalez has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on three grounds: (1) that he received ineffective assistance of counsel, (2) that his life sentence without parole violates the Eight Amendment, and (3) that the jury in his case should have been required to determine whether he committed first-degree murder beyond a reasonable doubt. For the reasons set forth below, the motion will be denied.

## I.    Background

On May 15, 2017, a federal grand jury returned a fifth superseding indictment charging Gonzalez with conspiracy to conduct enterprise affairs through a pattern of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). On June 21, 2018, following a thirteen-day trial, a jury convicted him of that charge and returned a special finding that he had knowingly participated in the September 2015 murder of Wilson Martinez and the January 2016 murder of Cristofer de la Cruz. Gonzalez was sentenced on November 27, 2018, to life in prison. On November 28, 2018, he filed a notice of appeal.

Gonzlez raised four grounds on direct appeal, two of which coincide with the arguments he now brings in his motion to vacate:  that his life sentence without parole violates the Eight Amendment and that the jury in his case should have been required to determine whether he committed first-degree murder beyond a reasonable doubt.  On November 17, 2020, the First Circuit affirmed the judgment, finding "the defendant's claims of constitutional error . . . unavailing"  and that the "district court acted within the ambit of its discretion by imposing a life-without-parole sentence."  *United States v. Gonzalez*, 981 F.3d 11, *14, *25 (1st Cir. 2020).[1]

 On February 13, 2023, Gonzalez filed a letter with this Court, explaining that he was "not sure [of] the deadline to file [his] appeal" and requesting "an extension" of at least six months.  (Docket No. 3310 at 1).  He wrote that "[d]ue to the national lockdown of all MS-13 members and affiliates on January 31, 2022," he had "no access to legal materials" or "[his] legal documents."[2]  *Id.*  The Court construed Gonzalez's letter as a "request for an extension of time to file a § 2255 motion," noting that Gonzalez appeared to be "[i]n substance . . . seek[ing] equitable tolling of the limitations period."  (Docket No. 3312 at 1).  Because Gonzalez had not yet filed a § 2255 motion, however, the Court denied the request without prejudice.  The Court wrote:  "If or when [Gonzalez] actually files a § 2255 petition, this court may consider his argument that such a petition should be considered timely. Until then, it lacks jurisdiction to consider the matter."  *Id.* at 2-3 (internal punctuation marks and citation omitted).

---

[1] On February 4, 2021, Gonzalez filed a petition for a writ of certiorari to the U.S. Supreme Court.  The petition was denied on March 22, 2021.

[2] Petitioner also attached to his letter a memorandum from the Federal Bureau of Prisons noting that he was part of a group of inmates transferred to USP Lewisburg who were experiencing "delays in receiving, securing, inspecting and issuing property."  (Docket No. 3310, Ex. 1).

On May 1, 2023, Gonzalez filed a motion to appoint counsel, and on October 3, 2023, he filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## II.    Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence.  The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).  The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255.  *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  In deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### A.    Period of Limitation and Equitable Tolling

Congress has established a one-year period of limitation governing motions for relief under § 2255.  28 U.S.C. § 2255(f).  The one-year period runs from the latest of one of four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme

Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could

have been discovered through the exercise of due diligence.

*Id.*

A court may extend the one-year limitation filing period under a theory of equitable

tolling.  A petitioner bears the burden of demonstrating the basis for equitable tolling by making

two showings:  "1) that he has been pursuing his rights diligently, and 2) that some extraordinary

circumstance stood in his way and prevented him from timely filing." *Figueroa v. United States*,

2012 WL 6626646, at *3 (D. Mass. Dec. 18, 2012) (quoting *Ramos-Martinez v. United States*,

638 F. 3d 315, 322-23, 325 (1st Cir. 2011)).

### B.   Procedural Bars

A petitioner in a motion filed pursuant to § 2255 cannot reassert arguments raised on

direct appeal.  As the First Circuit held in *United States v. Doyon*, "[t]o the extent that

[petitioner] is reasserting the argument that he made on direct appeal, he is barred from

relitigating that issue on collateral review." *Doyon*, 16 F. App'x 6, 9 (1st Cir. 2001) (citing

*Singleton v. United States*, 26 F.3d 233, 240 (1st Cir.1994)).  To the extent that a petitioner

intends to "add new elements to his constitutional claim that he failed to raise on direct appeal,

[petitioner] is required to show cause for the failure and actual prejudice." *Id.*

### C.   Ineffective Assistance of Counsel

A petitioner claiming a violation of the Sixth Amendment right to effective assistance of

counsel must show that "counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland v. Washington*, 466

U.S. 668, 687 (1984).  To succeed on such a claim, a petitioner must establish both (1) that his

4

counsel provided deficient assistance and (2) that he suffered prejudice as a result. *Id.*

The first prong requires a petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 689. A court making that evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007). The second prong requires petitioner to show that counsel's deficient performance resulted in "prejudice"— that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## III.   Analysis

### A.   Period of Limitation and Equitable Tolling

Petitioner's motion is not timely under any of the four prongs of § 2255(f). As to the first prong, a conviction becomes final when either the Supreme Court denies a writ of certiorari or when the time to file such a writ expires. *Clay v. United States*, 537 U.S. 522, 525 (2003). Here, the Supreme Court denied the petition for a writ of certiorari on March 22, 2021. Petitioner filed his motion on October 3, 2023, more than two and a half years after his judgment became final. Therefore, the motion is untimely under the first prong of § 2255(f)(1) by more than a year and half.

As to the second prong, petitioner does not contend that governmental action in violation of the Constitution or laws of the United States created an impediment to making his motion. As to the third prong, petitioner does not contend that he is asserting any right newly recognized by the Supreme Court. As to the fourth prong, petitioner does not contend that any of the facts supporting his claim were newly discovered or could have been previously discovered through

the exercise of due diligence.  Therefore, the second, third, and fourth prongs of § 2255(f) are not relevant.

A court may extend the one-year limitation filing period under a theory of equitable tolling if a petitioner shows that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa v. United States*, 2012 WL 6626646, at *3 (D. Mass. Dec. 18, 2012) (quoting *Ramos-Martinez v. United States*, 638 F. 3d 315, 322-23, 325 (1st Cir. 2011)).  No such equitable tolling is warranted here.

As an initial matter, petitioner makes no equitable tolling arguments in his § 2255 motion.  Even though the Court in its February 23, 2023, order put petitioner on notice of his burden under *Ramos-Martinez*, he does not explain why the one-year period of limitation should not apply in his case.  (*See* Docket No. 3312 at 2-3).  In the complete absence of any such argument, there is no basis to conclude that equitable tolling should apply.

Even considering petitioner's February 13, 2023 letter in determining whether tolling is appropriate, there would be no basis for equitable tolling.  First, petitioner does not demonstrate in his letter that he was pursuing his rights diligently.  His petition for a writ of certiorari was denied by the Supreme Court on March 22, 2021.  Petitioner arrived at USP Lewisburg on March 17, 2022.  Although he had "not yet received [all] of his property" as of February 6, 2023,  he has made no showing that he made diligent efforts to file a § 2255 motion for nearly one year before arriving at USP Lewisburg.  (Docket No. 3310, Ex. 1).  *See, e.g.*, *Mack v. Alves*, 2022 WL 623734, at *2 (D. Mass. Mar. 2, 2022) (declining to apply equitable tolling to habeas petition despite COVID-19 restrictions because petitioner failed to show why he was unable to file his petition during the initial months of the limitation period before COVID-19 restrictions were

6

imposed).[3]  In addition, petitioner does not demonstrate that he was pursuing his rights diligently from whichever date he ultimately received his property until the filing of his motion on October 3, 2023.

As to "extraordinary circumstances," petitioner makes no allegations regarding specific impediments that prevented him from timely filing; rather, he makes a generalized claim about restricted access to his belongings.  *See, e.g.*, *Hisert v. Blue Waters Dredging*, LLC et al., 2021 WL 1178301, at *1 n.1 (D. Mass. Mar. 29, 2021) (noting that the First Circuit dismissed a cross-appeal on timeliness grounds even though plaintiff contended that the COVID-19 pandemic justified his untimely filing, because he did not "show[] any *specific* impediment to timely filing that would warrant equitable relief") (emphasis added).

In summary, petitioner filed the motion to vacate outside the relevant time period and cannot show that the limitation period should be extended based on equitable tolling.  His claims are therefore time-barred.

### B.  <u>Procedural Bars</u>

Even if petitioner's § 2255 motion were not time-barred, two of the three claims put forward in his motion are procedurally barred.  As the First Circuit has established, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255  motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994).  In his § 2255 motion, petitioner contends:

> The life sentence without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition against cruel and unusual punishment, and at age 20 I believe I fit well within this criteria, violating my Eighth Amendment rights and depriving me of the possibly for rehabilitation.

---

[3] The BOP memorandum attached to petitioner's letter notes that he was "part of a mass movement of inmates" during the "year of 2022."  (Docket No. 3310, Ex. 1).  Even assuming for the sake of argument that petitioner was in transport from January 1, 2022, through March 17, 2022, he still would have had nine months to file a § 2255 motion before moving to USP Lewisburg.

(Docket No. 3342 at 5).  In his First Circuit brief, petitioner similarly asserted:  "A life sentence without parole for crimes committed by Gonzalez at age 20 constituted cruel and inhuman treatment in violation of the Eighth Amendment of the Constitution."  Brief and Addendum in Behalf of Edwin Gonzalez, *United States v. Gonzalez*, 981 F.3d 11 (1st Cir. 2020) (No. 19-1351), 2020 WL 582822, at *19.  The First Circuit evaluated that claim on the merits and found against petitioner, explaining that "the defendant has not made the case for extending the *Miller* ban on life-without-parole sentences to offenders—like the defendant—who were in the eighteen-to-twenty age range when they committed the crimes of conviction."  *Gonzalez*, 981 F.3d at *21.

> In his § 2255 motion, petitioner also asserts:
>
> The District Court refused to permit the jury, in accordance with Massachusetts law, to make a finding beyond a reasonable doubt that I was guilty of murder in the first degree and its determination of first degree murder by the preponderance standard at sentencing violated the *Alleyne* mandate. The Court also committed an error in failing to charge the jury regarding the crime of murder as defined by Massachusetts law rather than applying the definition of murder as defined in the RICO statute.

(Docket No. 3342 at 7).  In his brief for the First Circuit, petitioner raised the same argument. He alleged that "there was a clear *Alleyne* violation," and that the "district court was obliged to charge the elements of the penal code of Massachusetts State where acts of racketeering occurred, and was not permitted to rely upon generic definitions of murder in the first and second degrees under RICO."  Brief and Addendum, 2020 WL 582822, at *35-36.  The First Circuit rejected that claim on the merits, holding that "the defendant's *Alleyne*-based challenge is dead on arrival."  *Gonzalez*, 981 F.3d at *17.  In addition, the First Circuit determined that the "sentencing guidelines supply the linchpin for these determinations; Massachusetts law was irrelevant."  *Id.*

8

In sum, petitioner here raises two of the same grounds he raised on direct appeal.  The First Circuit found against him on the merits of those claims, and he therefore cannot relitigate them. Accordingly, those two claims are procedurally barred.

### C.     Ineffective Assistance of Counsel

Finally, even if petitioner's § 2255 motion was not time-barred, his claim for ineffective assistance of counsel is both procedurally defaulted and without merit.  Petitioner contends that his trial counsel "ill advised [him] that the result of [him] pleading guilty or taking his case to trial would be the same, and therefore [he] had nothing to lose." (Docket No. 3342 at 4).  He asserts that this advice "result[ed] in [him] obtaining a higher sentence" than the United States Sentencing Guidelines would have provided.  *Id.*

### 1.     Petitioner's Claim has been Procedurally Defaulted

Petitioner could have, but did not, raise his claim on a direct appeal.  "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff v. United States,* 308 F.3d 124, 127–28 (1st Cir.2002) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)).  Here, petitioner offers no argument regarding the cause for his default.  Therefore, he cannot now raise his procedurally defaulted claim.

### 2.     Petitioner's Claim Fails on the Merits

Petitioner's claim also fails on the merits.  Under *Stickland*, a petitioner seeking relief based on ineffective assistance of counsel must show both (1) deficient performance by counsel and (2) prejudice to the defense.  *Strickland*, 466 U.S. at 687.  Petitioner cannot make either showing.  First, petitioner did not actually receive a higher sentence than the United States Sentencing Guidelines would have provided.  His guideline sentencing range was life in prison,

and he obtained a sentence of life in prison.  PSR, ¶ 124.  Moreover, even if petitioner had

chosen to plead guilty instead of going to trial, his guidelines range still would have been life in

prison.  Petitioner's total offense level was 52.  PSR, ¶ 94.  If petitioner had pleaded guilty and

been given credit for acceptance of responsibility, his total offense level would have been 49.

Because "[a]n offense level of more than 43 is to be treated as an offense level of 43,"

petitioner's total offense level would have been 43.  U.S. SENT'G GUIDELINES MANUAL ch.5, pt. A,

n.2 (U.S. SENT'G COMM'N 2021).  That offense level corresponds with an advisory guidelines

range of life in prison.

In addition, the government at sentencing distinguished petitioner's crimes from those

committed by other defendants in the case who did not receive life in prison. The government

explained:  "For one thing, this murder by Gonzalez was more heinous and more well-planned

(i.e., more cold-blooded and heartless) than the murders committed by others who received less

than life in prison. (Out of the six murders in this case, arguably the only murder that was as

well-planned [as Gonzalez's first murder] was the second murder that Gonzalez

committed . . . . )."  (Docket No. 2853 at 7).  In fact, the government noted that even if the jury

had found petitioner responsible for one murder instead of two, "the government would still have

sought . . . a sentence of life in prison after trial."  *Id.*

## IV.    <u>Conclusion</u>

For the foregoing reasons, the motion of petitioner Edwin Gonzalez to vacate, set aside,

or correct his sentence is DENIED.  Petitioner's motion to appoint counsel is DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  November 6, 2023